**STATE of Maine,**

v.

**Mohammad KARGAR.**

Supreme Judicial Court of Maine.

Argued Jan. 5, 1996.

Decided June 20, 1996.

Stephanie Anderson, District Attorney, Julia Sheridan, (orally), Assistant District Attorney, Portland, for the State.

Catherine R. Connors (orally), Kevin F. Gordon, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

DANA, Justice. ˙

Mohammad Kargar, an Afghani refugee, appeals from the judgments entered in the Superior Court (Cumberland County, *Crowley, J.*) convicting him of two counts of gross sexual assault in violation of 17–A M.R.S.A. § 253(1)(B) (Supp.1995) (Class A).[1] Kargar contends on appeal that the court erred in denying his motion to dismiss pursuant to the *de minimis* statute, 17–A M.R.S.A. § 12 (1983). We agree and vacate the judgments.

On June 25, 1993, Kargar and his family, refugees since approximately 1990, were babysitting a young neighbor. While the neighbor was there, she witnessed Kargar kissing his eighteen-month-old son's penis. When she was picked up by her mother, the girl told her mother what she had seen. The mother had previously seen a picture of Kargar kissing his son's penis in the Kargar family photo album. After her daughter told her what she had seen, the mother notified the police.

Peter Wentworth, a sergeant with the Portland Police Department, went to Kargar's apartment to execute a search warrant. Wentworth was accompanied by two detectives, two Department of Human Services social workers, and an interpreter. Kargar's family was taken outside by the social workers and the two detectives began searching for a picture or pictures of oral/genital contact. The picture of Kargar kissing his son's penis was found in the photograph album. Kargar admitted that it was him in the photograph and that he was kissing his son's penis. Kargar told Wentworth that kissing a young son's penis is accepted as common

---

1. 17–A M.R.S.A. § 253(1)(B) (Supp.1995) provides, in pertinent part:
   1. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and: . . .

   B. The other person, not the actor's spouse, has not in fact attained the age of 14 years.

practice in his culture. Kargar also said it was very possible that his neighbor had seen him kissing his son's penis. Kargar was arrested and taken to the police station.

Prior to the jury-waived trial Kargar moved for a dismissal of the case pursuant to the *de minimis* statute. With the consent of the parties, the court held the trial phase of the proceedings first, followed by a hearing on the *de minimis* motion. The *de minimis* hearing consisted of testimony from many Afghani people who were familiar with the Afghani practice and custom of kissing a young son on all parts of his body.[2] Kargar's witnesses, all relatively recent emigrants from Afghanistan, testified that kissing a son's penis is common in Afghanistan, that it is done to show love for the child, and that it is the same whether the penis is kissed or entirely put into the mouth because there are no sexual feelings involved.[3] The witnesses also testified that pursuant to Islamic law any sexual activity between an adult and a child results in the death penalty for the adult. Kargar also submitted statements from Professor Ludwig Adamec of the University of Arizona's Center for Near Eastern Studies and Saifur Halimi, a religious teacher and Director of the Afghan Mujahideen Information Bureau in New York. Both statements support the testimony of the live witnesses. The State did not present any witnesses during the *de minimis* hearing. Following the presentation of witnesses the court denied Kargar's motion and found him guilty of two counts of gross sexual assault.

## I.

Maine's *de minimis* statute provides, in pertinent part:

1. The court may dismiss a prosecution if, ... having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds the defendant's conduct:

A. Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the crime; or

B. Did not actually cause or threaten the harm sought to be prevented by the law defining the crime or did so only to an extent too trivial to warrant the condemnation of conviction; or

C. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in defining the crime.

The court analyzed Kargar's conduct, as it should have, pursuant to each of the three provisions of section 12(1). The language of the statute itself makes it clear that if a defendant's conduct falls within any one of these provisions the court may dismiss the prosecution. We agree with the State that trial courts should be given broad discretion in determining the propriety of a *de minimis* motion. In the instant case, however, Kargar asserts that the court erred *as a matter of law* because it found culture, lack of harm, and his innocent state of mind irrelevant to its *de minimis* analysis. We agree.

## II.

Maine's *de minimis* statute is based on the Model Penal Code and the Hawaii Penal Code, and its purpose is to "introduce[ ] a desirable degree of flexibility in the administration of the law." 17–A M.R.S.A. § 12 comment (1983). The language of the statute expressly requires that courts view the defendant's conduct "having regard to the nature of the conduct alleged and the nature of the attendant circumstances." Each *de minimis* analysis will therefore always be case-specific. The Model Penal Code traces the history of *de minimis* statutes to section 13 of England's Stephen's Draft Code of 1879. Model Penal Code § 2.12 comment (1985). As justification for the proposed sec-

---

2. Kargar testified during the *de minimis* hearing that the practice was acceptable until the child was three, four, or five years old.

3. Kargar testified during the *de minimis* hearing that his culture views the penis of a child as not the holiest or cleanest part of the body because it is from where the child urinates. Kargar testified that kissing his son there shows how much he loves his child precisely because it is not the holiest or cleanest part of the body.

tion 13 it was suggested that courts should have the "power to discharge without conviction, persons who have committed acts which, though amounting in law to crimes, do not under the circumstances involve any moral turpitude." Model Penal Code § 2.12 comment (1985).

■ When making a determination under the *de minimis* statute, an objective consideration of surrounding circumstances is authorized. *State v. Smith*, 195 N.J.Super. 468, 480 A.2d 236, 238 (Law Div.1984) (recognizing that " 'sympathetic considerations play no part in a determination under' the *de minimis* statute"). Although we have not had occasion to articulate circumstances worthy of cognizance, we agree with the courts of New Jersey and Hawaii that the following factors are appropriate for *de minimis* analysis:

the background, experience and character of the defendant which may indicate whether he knew or ought to have known of the illegality; the knowledge of the defendant of the consequences to be incurred upon violation of the statute; the circumstances concerning the offense; the resulting harm or evil, if any, caused or threatened by the infraction; the probable impact of the violation upon the community; the seriousness of the infraction in terms of punishment, bearing in mind that punishment can be suspended; mitigating circumstances as to the offender; possible improper motives of the complainant or prosecutor; and any other data which may reveal the nature and degree of the culpability in the offense committed by the defendant.

*Id.* 480 A.2d at 238–39 (*citing State v. Park*, 55 Haw. 610, 525 P.2d 586, 591 (1974)). We thus hold that it is appropriate for courts to analyze a *de minimis* motion by reviewing the full range of factors discussed in the above quoted language.

### III.

■ Our review of the record in the instant case reveals that the court, in its analysis of section 12(1)(C), denied Kargar's motion without considering the full range of relevant factors. The court's interpretation of the subsection, which focused on whether the conduct met the definition of the gross sexual assault statute, operated to nullify the effect of the *de minimis* analysis called for by the statute. The focus is not on whether the conduct falls within the reach of the statute criminalizing it. If it did not, there would be no need to perform a *de minimis* analysis. The focus is on whether the admittedly criminal conduct was envisioned by the Legislature when it defined the crime. If the Legislature did not intend that there be an individual, case-specific analysis then there would be no point to the *de minimis* statute. Subsection 1(C) provides a safety valve for circumstances that could not have been envisioned by the Legislature. It is meant to be applied on a case-by-case basis to unanticipated "extenuations," when application of the criminal code would lead to an "ordered but intolerable" result. Model Penal Code § 2.12 comment (1985). Because the Legislature did in fact allow for unanticipated "extenuations," the trial court was required to consider the possibility that the result of a Class A conviction *in this case* could not have been anticipated by the Legislature when it defined the crime of gross sexual assault.

### IV.

■ In order to determine whether this defendant's conduct was anticipated by the Legislature when it defined the crime of gross sexual assault it is instructive to review the not-so-distant history of that crime. 17–A M.R.S.A. § 253(1)(B) makes criminal any sexual act with a minor (non-spouse) under the age of fourteen. A sexual act is defined as, among other things, "direct physical contact between the genitals of one and the mouth ... of the other." 17–A M.R.S.A. § 251(1)(C)(1) (Supp.1995). Prior to 1985 the definition of this type of sexual act included a sexual gratification element. The Legislature removed the sexual gratification element because, "given the physical contacts described, no concern exists for excluding 'innocent' contacts." L.D. 1386, Statement of Fact (112th Legis.1985). Thus, the 1985 amendment to section 251(1)(C) illuminates the fact that an "innocent" touching such as occurred in this case has not forever been

recognized as inherently criminal by our own law. The Legislature's inability to comprehend "innocent" genital-mouth contact is highlighted by reference to another type of "sexual act," namely, "[a]ny act involving direct physical contact between the genitals ... of one and an instrument or device manipulated by another." 17–A M.R.S.A. § 251(1)(C)(3) (Supp.1995). The Legislature maintained the requirement that for this type of act to be criminal it must be done for the purpose of either sexual gratification or to cause bodily injury or offensive physical contact. Its stated reason for doing so was that "a legitimate concern exists for excluding 'innocent' contacts, such as for proper medical purposes or other valid reasons." L.D. 1386, Statement of Fact (112th Legis.1985).

All of the evidence presented at the *de minimis* hearing supports the conclusion that there was nothing "sexual" about Kargar's conduct. There is no real dispute that what Kargar did is accepted practice in his culture. The testimony of every witness at the *de minimis* hearing confirmed that kissing a young son on every part of his body is considered a sign only of love and affection for the child. This is true whether the parent kisses, or as the trial court found, "engulfs" a son's penis. There is nothing sexual about this practice. In fact, the trial justice expressly recognized that if the State were required to prove a purpose of sexual gratification it "wouldn't have been able to have done so."

During its sentencing of Kargar, the court stated: "There is no sexual gratification. There is no victim impact." The court additionally recognized that the conduct for which Kargar was convicted occurred in the open, with his wife present, and noted that the photograph was displayed in the family photo album, available for all to see.[4] The court concluded its sentencing by recognizing that this case is "not at all typical [but

instead is] fully the exception.... The conduct was unequivocally criminal, but the circumstances of that conduct and the circumstances of this defendant call for leniency." Although the court responded to this call for leniency by imposing an entirely suspended sentence, the two convictions expose Kargar to severe consequences independent of any period of incarceration, including his required registration as a sex offender pursuant to 34–A M.R.S.A. § 11003 (Supp.1995), and the possibility of deportation pursuant to 8 U.S.C.A. § 1251(a)(2)(A)(i)(I) (West Supp. 1996). These additional consequences emphasize why the factors recognized by the court during the sentencing hearing were also relevant to the *de minimis* analysis.

Although it may be difficult for us as a society to separate Kargar's conduct from our notions of sexual abuse, that difficulty should not result in a felony conviction in this case. The State concedes that dismissing this case pursuant to the *de minimis* statute would pose little harm to the community. The State is concerned, however, with the potential harm caused by courts using the factors of this case to allow for even more exceptions to the criminal statutes. It argues that exceptions should be made by the Legislature, which can gather data, debate social costs and benefits, and clearly define what conduct constitutes criminal activity. The flaw in the State's position is that the Legislature has already clearly defined what conduct constitutes gross sexual assault. It has also allowed for the adjustment of the criminal statutes by courts in extraordinary cases where, for instance, the conduct cannot reasonably be regarded as envisaged by the Legislature in defining the crime.[5]

As discussed above, the Legislature removed the sexual gratification element previously contained within the definition of a sexual act because it could not envision any possible innocent contacts, "given the physical contacts described." In virtually every

---

4. Kargar's wife, Shamayel, testified during the sentencing hearing that she took the picture to send to Kargar's mother to show her how much he loved his son.

5. Application of the *de minimis* statute does not nullify the gross sexual assault statute nor does it

reflect approval of Kargar's conduct. The conduct remains criminal. Kargar does not argue that he should now be permitted to practice that which is accepted in his culture. The issue is whether his past conduct under all of the circumstances justifies criminal convictions.

case the assumption that a physical touching of the mouth of an adult with the genitals of a child under the age of fourteen is inherently harmful is correct. This case, however, is the exception that proves the rule. Precisely because the Legislature did not envision the extenuating circumstances present in this case, to avoid an injustice the *de minimis* analysis set forth in section 12(1)(C) requires that Kargar's convictions be vacated.

The entry is:

Judgments vacated. Remanded to the Superior Court with instructions to enter an order granting defendant's motion to dismiss pursuant to 17–A M.R.S.A. § 12(1)(C).

All concurring.