SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-04-213

NM-LEN- 11/9/05

STATE OF MAINE

v.

JUDGMENT AND ORDER
ON MOTION TO DISMISS

MICHELLE RAMIREZ,

Defendant

The defendant is charged with Gross Sexual Assault and Unlawful Sexual Contact. See 17-A M.R.S.A. §§ 253(1)(B) & 255-A(1)(E) (Supp. 2004). The offenses are alleged to have occurred between 9/24/03 and 1/31/04. Jury-waived trial on the indictment and hearing on the defendant's motion to dismiss were consolidated. See 17-A M.R.S.A. § 12 (1983). The hearings concluded on 10/31/05. For the reasons discussed below, the court finds that the State has proved beyond a reasonable doubt that the defendant committed Gross Sexual Assault as alleged in the indictment. The court finds that the State has not proved beyond a reasonable doubt that the defendant committed Unlawful Sexual Contact as alleged in the indictment. The defendant's motion to dismiss the Gross Sexual Assault charge as de minimus is granted.

FACTS

The defendant presented three qualified and credible witnesses to describe the relationship between a mother and her young child in the Dominican Republic culture. The State presented no witnesses on this issue.

There is no question on this record that the culture of the Dominican Republic recognizes an extremely nurturing relationship among mothers and their young

children. Children are a mother's most important priority and mothers are open and affectionate in every way with their children. Mothers interact physically and emotionally on a regular basis with their children. Touching and kissing all parts of a child's body are common ways for a mother to express her love and affection. Touching, kissing, and caressing a male or female child's genitals, including a male child's erect penis, are included in this common intimate interaction between a mother and her child. Placing a child's penis inside the mother's mouth is more sexual in nature and is not considered part of the common interaction between mother and child.

Touching and kissing a child's genitals are not intended as sexual and are not sexual. Dominican Republic society considers the mother's conduct as normal and not harmful to the child. In fact, this behavior signifies the love and trust of a mother for her child and is a method of making bathing and diaper changing an enjoyable occasion for the child.

Dominican mothers living in the United States interact with their children according to the traditions of their cultural heritage. There is no difference in the behavior of mothers who have been in the United States for a long period of time and those who have just arrived in this country.

The defendant is 26 years old and a citizen of the Dominican Republic. She moved to the United States at age six and lived in Florida, New York, and Massachusetts with her mother, brother, and sister and surrounded by relatives until her junior year of high school. She returned to the Dominican Republic for her senior year of high school and two semesters of college. She resided with a friend of her mother's and with nuns at the Catholic college she attended. She returned to the United States after finishing school in the Dominican Republic and lived again with relatives. Just before the birth of her third child, Isaac, she moved to Maine.

During her childhood years, the defendant learned that physical intimacy between a mother and her young child was appropriate and helpful to their relationship. She observed her aunts interact with their children according to the tradition of the Dominican culture.

The defendant's mother had taught the defendant about improper touching. The defendant knew that placing a child's penis in her mouth was wrong but she believed that her contact with Isaac, which did not include placing his penis in her mouth, was appropriate.

The defendant has two children with Kevin Francoeur, Taylor, born 9/13/99, and Isaac, born on 7/14/02, the alleged victim of the charges pending against the defendant. The defendant's oldest child, Abbey, is from a different relationship.

The defendant could not recall every instance of her interaction with her son, Isaac, which forms the basis of the indictment, because such behavior was not her focus until this court case began. She did not form lasting memories of her routine daily mothering of Isaac as she did with his first steps and first words. She did recall kissing Isaac's penis on two occasions, which she could describe in detail. The first occurred in her bedroom when Isaac was seven or eight months old. The defendant was changing Isaac's diaper and she and Mr. Francoeur were laughing about Isaac's erect penis. The defendant touched her son's penis with a "wipey," cleaned her him, kissed his feet, tummy, and penis, and put a diaper on.

The second occasion occurred in the living room when Mr. Francoeur, his brother Rodney Boisvert, Abbey, and Taylor were present. The defendant was again changing Isaac's diaper. Mr. Francoeur commented that his son was not as well endowed as his father. The defendant cleaned her son, held him up in her arms, and

kissed his penis and his tummy, which made Isaac laugh. The defendant placed Isaac on the couch and put his diaper on.

The defendant did not place Isaac's penis in her mouth, which she knew was inappropriate. She made no attempt to hide her contact with Isaac and did not intend through her contact to arouse or gratify sexual desire or to cause bodily injury or offensive physical contact.

Eventually, the defendant's relationship with Mr. Francoeur deteriorated. In 2000, in a parental rights and responsibilities action, the court awarded the primary physical residence of Abbey and Isaac to the defendant and visitation rights to Mr. Francoeur. In late 2003, although the police were called to their residence, Mr. Francoeur did not tell the police about any inappropriate sexual contact between the defendant and Isaac, although he now alleges that contact had occurred prior to the contact with the police.

The defendant ultimately left Mr. Francoeur and took the children to Arkansas. Mr. Francoeur knew where the defendant was because he and his brother, Mr. Boisvert, secretly placed a tracking device in her car. Contrary to Mr. Francoeur's admission that he asked his brother to install the tracking device, Mr. Boisvert denied that he had been involved.

At a court hearing in Arkansas on January 26, 2004 on the defendant's request for a protection order against Mr. Francoeur, attended by Mr. Francoeur and his attorney, the defendant admitted, as in this trial, that she kissed Isaac's penis. No questions about the defendant's alleged putting the penis in her mouth or rubbing the penis to achieve an erection were asked of the defendant by Mr. Francoeur's attorney.

In the complaint for protection from abuse filed against the defendant on 1/14/04 in Maine, Mr. Francoeur did not allege any inappropriate sexual contact

between the defendant and Isaac. Hearing on that complaint was held on 2/3/04, the pivotal date in the history of this criminal case. At the 2/3/04 hearing, the District Court judge ordered that the 2000 court order would remain in effect; in other words, the children would remain in the defendant's primary custody.

On that same day, Mr. Francoeur began his quest to have the defendant charged with a crime, in an effort to achieve in the criminal court what he failed to achieve in the family court. He succeeded, temporarily, through a bail order dated 1/7/05 that prohibited the defendant from having any contact with Isaac. Mr. Francoeur testified in this trial that he had "horrible luck" with the female judges in the court system. Mr. Francoeur also did not fare well with one male District Court judge, who, Mr. Francoeur testified, ordered him to "return the children" to the defendant or face "contempt of court and blah, blah, blah." Mr. Francoeur admitted that he "absolutely" did not comply with the court order to return the children, in spite of warrants issued for his arrest.

On 2/3/04, Mr. Francoeur obtained witness statement forms from the Monmouth Police Department and began soliciting statements from family members and a cleaning lady about the defendants' alleged inappropriate conduct, which had never been raised by anyone prior to 2/3/04. Mr. Francoeur wrote the statement for the cleaning lady and she signed it. Mr. Francoeur's brother, Mr. Boisvert, wrote his wife's statement and she signed it. This procedure was required, according to Mr. Boisvert, because his wife's handwriting was "bubbly."

At trial, Mr. Francoeur testified that the defendant rubbed her mouth up and down on Isaac's penis and blew on it in order to give Isaac an erection. He alleged that her mouth was on Isaac's penis and her lips were on his testicles. He alleged that he scolded at the defendant about her behavior.

5

On 2/20/04, Cathy Cyr, a child protective supervisor from the Department of Health and Human Services (DHHS) spoke to Mr. Francoeur, who was unhappy with the pace of the investigation of the defendant. Although Mr. Francoeur told Ms. Cyr during a telephone call that the police had interviewed the children, no interview had taken place because the children were kept hidden by Mr. Francoeur. When Ms. Cyr confronted Mr. Francoeur on this issue, he became angry, said he would call television channel 13, and hung up. At trial, Mr. Francoeur denied giving incorrect information to Ms. Cyr and asked counsel, "why would I say it?"

Mr. Boisvert testified that he observed the defendant kiss Isaac's penis. He alleged that he asked the defendant what she was doing. He did not mention this incident to his brother.

Kourtney Francoeur, the twelve-year-old daughter of Mr. Francoeur and Kimberly Galgoeitch, testified that she saw the defendant put Isaac's penis in her mouth. There were significant differences between Kourtney's testimony in court and her statements to the police and representatives of the DHHS regarding the issues of who observed the defendant's alleged conduct, Kourtney's relationship with the defendant, and the number of times Kourtney witnessed this alleged conduct. For example, she told the police that the defendant engaged in this conduct with Isaac "all the time." At trial, she testified that she believed that she saw this conduct more than once but not all the time. Kourtney's breaking down and crying on the witness stand during fairly benign cross-examination made clear the regrettable position this child found herself in.

Zechariah Francoeur, the fourteen-year-old son of Mr. Francoeur and Ms. Galgoeitch, testified, as did his sister, that he saw the defendant place Isaac's penis in her

mouth on two occasions. Zechariah never mentioned the defendant's conduct to anyone at the time of his alleged observations and he said nothing to the defendant.

There were significant differences between Zechariah's testimony in court and his statements to the police and representatives of the DHHS. Zechariah told the police and the representatives of the DHHS that he saw the defendant kiss Isaac's penis. At trial, he did not know why he did not tell the police that the defendant placed Isaac's penis in her mouth. He did not remember whether he told the police that he and his father tracked the defendant's vehicle for 48 hours. He denied giving a different sequence of events when he spoke to the police.

He testified that these discrepancies resulted from the facts that the events happened a long time ago and he could not remember everything and because the woman from the DHHS was "very confusing." Zechariah also told the DHHS representatives that the defendant told doctors that Mr. Francoeur had injured her spleen; the medical records reveal that she told the doctors that she hurt herself on a four-wheeler. Notwithstanding the records, Zechariah was sure that the defendant had blamed Mr. Francoeur, although he had not heard her say that. Mr. Francoeur agreed that "possibly" he told Zechariah that the defendant blamed Mr. Francoeur for her injuries.

The testimony of Mr. Francoeur's grandfather, Gilman DeVoe, was fundamentally different from the witness statement he wrote, signed, and gave to the police. In the written statement, Mr. DeVoe stated that he saw the defendant's lips on Isaac's penis when the defendant brought Isaac out of the bathroom. At trial, Mr. DeVoe admitted that he did not actually see any contact. Because Isaac was smiling, he "took it for granted" what happened. He testified at trial, "yeah, that's family." Mr.

7

DeVoe said nothing to the defendant and did not remember whether his wife said anything at the time of the defendant's alleged conduct.

In spite of Mr. DeVoe's testimony that Isaac was wrapped in a towel when the defendant carried him from the bathroom, Norma DeVoe, Gilman DeVoe's wife, testified that she was able to see the defendant put her face on Isaac's penis, which became erect. She testified also that she told the defendant that such conduct was "disgusting" and "not very nice". In her two statements given to the police at Mr. Francoeur's request, Ms. DeVoe did not mention Isaac's erection or her admonishment to the defendant. As with the others, Ms. DeVoe did not mention these incidents to anyone after they occurred until the criminal investigation began. Ms. DeVoe also kept the defendant's children at her home at the time Mr. Francoeur was court-ordered to return the children to the defendant.

CONCLUSIONS

The testimony of Mr. Francoeur and Mr. Boisvert was biased and not credible and is rejected. Mr. Francoeur appeared motivated by hostility toward the defendant, hostility he easily transferred to the representatives of the DHHS and to the judges of the court. His blatant disregard of court orders was unfortunate.

The remainder of the State's witnesses contradicted each other and themselves during their testimony. They simply could not keep their version of events straight and appeared uncomfortable while testifying. Based on their testimony, the court could not form a conscientious belief that anything was true.

Most important, the testimony did not make sense. If the defendant had indeed engaged the type of conduct described by the State's witnesses, certainly someone would have taken some action before 2/3/04.

8

Based on the defendant's own testimony, the court concludes that she committed Gross Sexual Assault as alleged in the indictment by placing her mouth <u>on</u> Isaac's penis and kissing it. Because she did not intend to subject Isaac to any sexual contact for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact, the court concludes she did not commit Unlawful Sexual Contact. <u>See</u> 17-M.R.S.A. § 251(D) (Supp. 2004).

The court concludes that the Gross Sexual Assault charge must be dismissed as <u>de</u> minimus. <u>See</u> 17-A M.R.S.A. § 12 (1)(C) (1983); <u>State v. Kargar</u>, 679 A.2d 81 (Me. 1996). As in <u>Kargar</u>, the defendant's conduct was not sexual in nature and was within the accepted practice in her country. <u>See id</u>. at 85.

Pursuant to the <u>Kargar</u> analysis,

1. the court concludes that the defendant did not know that kissing her son's penis as she did was illegal and that she had no knowledge of the possible consequences resulting from a violation of the statute.

2. the defendant interacted with her son openly, as did Mr. Kargar.

3. no harm was caused to Isaac by her conduct.

4. there is no impact on the community from the violation. The State's argument about harm to those witnessing this conduct could have been made in <u>Kargar</u>, where a young neighbor reported what she had seen to her mother, who also had seen a photo of Mr. Kargar kissing his son's penis. In <u>Kargar</u>, the Law Court noted that the State conceded that dismissing the case would pose little harm to the community.

5. this crime is serious, indeed, and even with a suspended jail sentence, the defendant would be subject to sex offender registration and to potential deportation.

6. the defendant appears to have little support from friends or relatives in Maine. Her only witnesses traveled from the Dominican Republic and Massachusetts to testify about her culture.

7. the improper motives[1] of Mr. Francoeur loom large in this case.

See id. at 84.

The entry is

Count I of the Indictment is DISMISSED.

On Count II of the Indictment, the finding is NOT GUILTY.

Date: November 9, 2005

Nancy Mills
Justice, Superior Court

---

[1] In this case, there is no suggestion, nor could there be, of improper motives on the part of the State. See Kargar, 679 A.2d at 84.

STATE OF MAINE
  vs
MICHELLE L RAMIREZ
5 MILL ROAD
CUMBERLAND ME 04021

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CR-2004-00213

**DOCKET RECORD**

DOB: 10/06/1978
Attorney: JOHN PELLETIER
          GOODSPEED & O'DONNELL
          10 SUMMER ST
          PO BOX 738
          AUGUSTA ME 04332-0738
          APPOINTED 04/12/2004

State's Attorney: EVERT FOWLE

Filing Document: INDICTMENT
Filing Date: 05/07/2004

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1   GROSS SEXUAL ASSAULT                        09/24/2003 MONMOUTH
Seq 637   17-A   253(1)(B)          Class A
   LOVERING              / MON


2   UNLAWFUL SEXUAL CONTACT                     09/24/2003 MONMOUTH
Seq 8400  17-A   255-A(1)(E)        Class C
   LOVERING              / MON


## Docket Events:

05/07/2004 FILING DOCUMENT -  INDICTMENT FILED ON 05/07/2004

           TRANSFER -  BAIL AND PLEADING GRANTED ON 05/07/2004

           TRANSFER -  BAIL AND PLEADING REQUESTED ON 05/07/2004

05/11/2004 Party(s): MICHELLE L RAMIREZ
           ATTORNEY -  APPOINTED ORDERED ON 04/12/2004

           Attorney:  JOHN PELLETIER
05/11/2004 Charge(s): 1,2
           HEARING -  ARRAIGNMENT SCHEDULED FOR 05/26/2004 @ 8:30

05/17/2004 TRANSFER -  BAIL AND PLEADING RECVD BY COURT ON 05/17/2004

           RECEIVED FROM AUGUSTA DISTRICT COURT DOCKET NO: CR-04-504
05/17/2004 BAIL BOND -  $5,000.00 CASH BAIL BOND FILED ON 05/17/2004

           Bail Receipt Type: CR
           Bail Amt: $5,000
                              Receipt Type: CK
           Date Bailed: 03/01/2004    Prvdr Name: MICHELLE  RAMIREZ
                                      Rtrn Name: MICHELLE  RAMIREZ


       **Conditions of Bail:**

Have no contact with...

1   ISAAC   FRANCOEUR   NOT TO BE AT HIS RESIDENCE
2   TAYLOR   FRANCOEUR   UNLESS SUPERVISED BY ABUSED WOMENS ADVOCACY PROJECT
3   KEVIN   FRANCOEUR   EXCEPT DIRECT CONTACT FOR COURT PROCEEDINGS AND INDIRECT CONTACT
                        THROUGH A THIRD PERSON FOR PURPOSES OF VISITATION
BAIL DISBURSEMENT ON 11/16/2005
Check No. 6046   Check Amount:  5,000.00
Paid To: MICHELLE   RAMIREZ
RETURNED TO DEFENDANT


05/26/2004 Charge(s): 1,2
           HEARING -  ARRAIGNMENT HELD ON 05/26/2004
           S KIRK STUDSTRUP , JUSTICE
           Attorney:  JOHN PELLETIER
           DA:  ALAN KELLEY          Reporter: CASE ENOCH
           Defendant Present in Court


           READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
           DEFENDANT.  21 DAYS TO FILE MOTIONS
05/26/2004 Charge(s): 1,2
           PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 05/21/2004


05/26/2004 Charge(s): 1,2
           PLEA -  NOT GUILTY ACCEPTED BY COURT ON 05/21/2004


05/26/2004 BAIL BOND -  CASH BAIL BOND CONTINUED AS POSTED ON 05/26/2004

           Date Bailed: 03/01/2004
           BAIL DISBURSEMENT ON 11/16/2005
           Check No. 6046   Check Amount:  5,000.00
           Paid To: MICHELLE   RAMIREZ
           RETURNED TO DEFENDANT


06/30/2004 MOTION -  MOTION FOR EXTENSION OF TIME FILED BY DEFENDANT ON 06/29/2004


06/30/2004 MOTION -  MOTION FOR FUNDS FILED BY DEFENDANT ON 06/29/2004


06/30/2004 MOTION -  MOTION TO PRODUCE DHS RECORD FILED BY DEFENDANT ON 06/29/2004


07/02/2004 MOTION -  MOTION TO PRODUCE DHS RECORD GRANTED ON 07/02/2004

           COPY TO PARTIES/COUNSEL
07/02/2004 MOTION -  MOTION FOR FUNDS GRANTED ON 07/02/2004

           COPY TO PARTIES/COUNSEL
07/02/2004 MOTION -  MOTION FOR EXTENSION OF TIME GRANTED ON 07/02/2004

           COPY TO PARTIES/COUNSEL
07/29/2004 OTHER FILING -  DHS RECORD FILED ON 07/28/2004


08/06/2004 Charge(s): 1,2

TRIAL - DOCKET CALL SCHEDULED FOR 09/07/2004 @ 9:00

09/15/2004 Charge(s): 1,2
TRIAL - DOCKET CALL CONTINUED ON 09/07/2004

NEEDS INTERPRETER
09/15/2004 MOTION - MOTION FOR FUNDS FILED BY DEFENDANT ON 09/07/2004

09/15/2004 MOTION - MOTION FOR FUNDS GRANTED ON 09/07/2004
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL
10/06/2004 MOTION - OTHER MOTION FILED BY DEFENDANT ON 10/06/2004

MOTION TO COPY A SINGLE DEPT OF HUMAN SERVICES RECORD. NO OBJECTION BY DA
10/12/2004 MOTION - OTHER MOTION GRANTED ON 10/08/2004
S KIRK STUDSTRUP , JUSTICE
MOTION TO COPY A SINGLE DEPT OF HUMAN SERVICES RECORD. NO OBJECTION BY DA CLERK TO
PROVIDE 1 COPY. DOCUMENT TO BE KEPT CONFIDENTIAL BY ATTORNEY FOR DEFENDANT.
COPY TO COUNSEL.
10/12/2004 TRIAL - DOCKET CALL SCHEDULED FOR 11/03/2004 @ 9:00

11/02/2004 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 11/02/2004

Attorney: JOHN PELLETIER
DEFENDANT'S MOTION TO CONTINUE WITH ATTACHMENTS, FILED. (NO OBJECTION)
11/03/2004 TRIAL - DOCKET CALL CONTINUED ON 11/02/2004

11/03/2004 MOTION - MOTION TO CONTINUE GRANTED ON 11/02/2004
NANCY MILLS , SUPERIOR COURT CHIEF JUSTICE
COPY TO PARTIES/COUNSEL
12/13/2004 TRIAL - DOCKET CALL SCHEDULED FOR 01/06/2005 @ 9:00

01/25/2005 TRIAL - DOCKET CALL HELD ON 01/06/2005

02/04/2005 TRIAL - DOCKET CALL SCHEDULED FOR 03/07/2005 @ 3:15

02/17/2005 MOTION - MOTION TO REVOKE BAIL FILED BY STATE ON 02/17/2005

02/17/2005 WARRANT - VIOLATION OF BAIL REQUESTED ON 02/17/2005

02/17/2005 WARRANT - VIOLATION OF BAIL ORDERED ON 02/17/2005

02/17/2005 WARRANT - VIOLATION OF BAIL ISSUED ON 02/17/2005

02/23/2005 WARRANT - VIOLATION OF BAIL RECALLED ON 02/23/2005

SPOKE WITH JEN AT KSO
02/23/2005 BAIL BOND - $200.00 CASH BAIL BOND FILED ON 02/23/2005

Bail Receipt Type: CR
Bail Amt: $200
Receipt Type: CA
Date Bailed: 02/23/2005      Prvdr Name: MICHELLE  RAMIREZ

Rtrn Name: MICHELLE  RAMIREZ

## Conditions of Bail:

Refrain from possession or use of intoxicating liquor. Refrain from possession or use of any unlawful drugs.

Submit to random search and testing for alcohol, drugs upon reasonable suspicion of use or possession.

Other:NOT TO BE IN AN ESTABLISHMENT THAT SERVES ALCOHOL FOR ON PREMISES CONSUMPTION
BAIL DISBURSEMENT ON 11/16/2005
Check No. 6046    Check Amount:  200.00
Paid To: MICHELLE  RAMIREZ
RETURNED TO DEFENDANT

03/04/2005 HEARING -  BAIL HEARING HELD ON 02/23/2005
           NANCY  MILLS , SUPERIOR COURT CHIEF JUSTICE
           Attorney:  JOHN PELLETIER
           DA:  ALAN KELLEY           Reporter: KATHLEEN CASEY
           Defendant Present in Court
03/04/2005 BAIL BOND - $200.00 CASH BAIL BOND SET BY COURT ON 02/23/2005
           NANCY  MILLS , SUPERIOR COURT CHIEF JUSTICE
03/11/2005 TRIAL -  DOCKET CALL HELD ON 03/07/2005

03/11/2005 TRIAL -  DOCKET CALL CONTINUED ON 03/07/2005

           CONTINUED TO MAY LIST.
04/05/2005 TRIAL -  DOCKET CALL SCHEDULED FOR 05/04/2005 @ 2:40

05/03/2005 MOTION -  MOTION TO CONTINUE FILED BY DEFENDANT ON 05/03/2005

05/03/2005 MOTION -  MOTION TO DISMISS FILED BY DEFENDANT ON 05/03/2005

           MOTION TO DISMISS AS DE MINIMIS
05/04/2005 MOTION -  MOTION TO CONTINUE GRANTED ON 05/03/2005

           COPY TO PARTIES/COUNSEL
05/04/2005 TRIAL -  DOCKET CALL CONTINUED ON 05/03/2005

05/13/2005 TRIAL -  DOCKET CALL SCHEDULED FOR 06/09/2005 @ 9:00

06/07/2005 MOTION -  OTHER MOTION FILED BY DEFENDANT ON 06/07/2005

           MOTION FOR DISCLOSURE AND COPYING OF SINGLE DEPARTMENT OF HUMAN SERVICES RECORD
06/09/2005 MOTION -  OTHER MOTION GRANTED ON 06/09/2005
           DONALD H MARDEN , JUSTICE
           MOTION FOR DISCLOSURE AND COPYING OF SINGLE DEPARTMENT OF HUMAN SERVICES RECORD
                                                    MOTION GRANTED, PROVIDED IT IS
           HANDLED AS A CONFIDENTIAL DOCUMENT.  COPIES ISSUED TO COUNSEL OF RECORD.
06/09/2005 Charge(s): 1,2
           MOTION -  MOTION TO CONTINUE FILED BY DEFENDANT ON 06/07/2005

Attorney: JOHN PELLETIER
NO OBJECTION BY THE STATE.
06/10/2005 Charge(s): 1,2
MOTION - MOTION TO CONTINUE GRANTED ON 06/09/2005
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL
06/22/2005 TRIAL - DOCKET CALL CONTINUED ON 06/09/2005


07/08/2005 HEARING - MOTION TO DISMISS SCHEDULED FOR 09/20/2005 @ 10:00

NOTICE TO PARTIES/COUNSEL
09/21/2005 HEARING - MOTION TO DISMISS SCHEDULED FOR 09/23/2005 @ 8:00

NOTICE TO PARTIES/COUNSEL
09/21/2005 HEARING - MOTION TO DISMISS HELD ON 09/20/2005
NANCY MILLS , SUPERIOR COURT CHIEF JUSTICE
Attorney: JOHN PELLETIER
DA: ALAN KELLEY        Reporter: CONSTANCE ROTH
Defendant Present in Court


HEARING DID NOT FINISH IN THE TIME ALLOWED TO BE CONTINUED UNTIL 9/23/05
09/27/2005 HEARING - MOTION TO DISMISS HELD ON 09/23/2005
NANCY MILLS , SUPERIOR COURT CHIEF JUSTICE
Attorney: JOHN PELLETIER
DA: ALAN KELLEY        Reporter: JANETTE COOK
Defendant Present in Court
11/16/2005 Charge(s): 1,2
TRIAL - BENCH HELD ON 10/31/2005 @ 1:00
NANCY MILLS , SUPERIOR COURT CHIEF JUSTICE
Attorney: JOHN PELLETIER
DA: ALAN KELLEY        Reporter: PEGGY STOCKFORD
Defendant Present in Court
11/16/2005 CASE STATUS - DECISION UNDER ADVISEMENT ON 10/31/2005
NANCY MILLS , SUPERIOR COURT CHIEF JUSTICE
11/16/2005 Charge(s): 1,2
FINDING - NOT GUILTY ENTERED BY COURT ON 11/09/2005
NANCY MILLS , SUPERIOR COURT CHIEF JUSTICE
11/16/2005 Charge(s): 1,2
ABSTRACT - SBI ISSUED ON 11/16/2005

11/16/2005 Charge(s): 1,2
ABSTRACT - IMMIGRATION ISSUED ON 11/16/2005


11/16/2005 BAIL BOND - CASH BAIL BOND DISBURSEMENT ON 11/16/2005

Date Bailed: 03/01/2004
BAIL DISBURSEMENT ON 11/16/2005
Check No. 6046   Check Amount: 5,000.00
Paid To: MICHELLE RAMIREZ
RETURNED TO DEFENDANT


11/16/2005 BAIL BOND - CASH BAIL BOND DISBURSEMENT ON 11/16/2005

Date Bailed: 02/23/2005
BAIL DISBURSEMENT ON 11/16/2005
Check No. 6046   Check Amount:   200.00
Paid To: MICHELLE  RAMIREZ
RETURNED TO DEFENDANT


A TRUE COPY
ATTEST: _____
                    Clerk