STATE OF MAINE                          UNIFIED CRIMINAL COURT

AROOSTOOK, ss                           DOCKET NO. CR-16-035

STATE OF MAINE                    )
                                  )
                                  )
                                  )
vs.                               )     ORDER ON MOTION
                                  )     TO DISMISS AS A
                                  )      DE MINIMIS INFRACTION
                                  )
JAYDE L. BOYD                     )
        Defendant                )


Defendant has filed a motion to dismiss the charge brought by the State as a de minimis infraction pursuant to 17-A M.R.S.A Section 12. Defendant is charged with Class B. Unlawful Trafficking of Scheduled Drugs, 17-A M.R.S.A Section 1103(1-A)(A) by accomplice liability, Title 17-A M.R.S.A. Section 57(3)(A). For the following reasons the motion is denied.

## FACTS

Hearing was held on November 30, 2016. Sworn testimony was received from Josh Caldwell, MDEA Agent Seeley and Fran Capell. Evidence also included a recording of the controlled buy conducted on December 21, 2015 and of the interview by Agent Seeley of the Defendant conducted February 2, 2016.

In December of 2015 Caldwell was working with MDEA as an informant in drug activity. David Rowland had becomethe subject of their focus as a suspected drug/Methamphetamine dealer. A controlled buy was arranged for Caldwell to approach Rowland to buy meth. Caldwell contacted Rowland and arrangemnts were made for Caldwell to go to Rowland's home on December 21, 2015 to purchase a quantity of meth. Caldwell was fitted with an electronic recording/transmitting device.

At that time Rowland was living at 211 Access Highway in Limestone. When Caldwell went there it was not anticipated or expected anyone else would be there. Caldwell was the sole focus of this particular controlled buy. However, when Caldwell arrived at the home, the Defendant was also present. In fact, the Defendant's mother, Fran Capell, who lived away at the time, owned the home. So others including her children and their acquantances lived there. The Defendant was at the home on some regular basis, but "came and went" depending largely on her status with her boyfriend. In December of 2015, although not living there consistently, the Defendant did stay there on occasions

1

and knew Rowland was selling drugs from the home and using some portion of the proceeds to help pay the home expenses. She was present during some of Rowland's drug transactions.

When Caldwell arrived at the 211 Access Highway home, he knocked on the door, was told to enter and entered into the living room. Rowland and the Defendant were sitting on one side of a an "L" shaped sectional sofa. Caldwell sat on the other side. A coffee table was positioned in front of the sofa.

After some brief small talk, Rowland asked Caldwell if he had a jar, to package the meth in that Rowland was selling him. Caldwell responded he did not have a jar. The Defendant responded "bummer." Caldwell then indicated he had some cellophane in which to place the meth. The Defendant stated something to the effect of "how about a lollipop wrapper."[1]

On the topic of the lollipop wrapper, Caldwell could not recall ever seeing it in the Defendant's hand or possession. Caldwell's best recollection of the lollipop wrapper is first seeing it on the coffee table when the Defendant mentioned it as a means for packaging the meth being sold.

Rowland then placed a quantity of meth onto the lollipop wrapper and wrapped it up. Caldwell asked if that would work better than cellophane, which he had brought with him. Rowland handed the meth to Caldwell. Caldwell then said something about "..I'm just going to wrap it in this." Caldwell then wrapped the lollipop wrapper holding the meth in the cellophane he had brought with him. Caldwell paid Rowland $50. Just before leaving the Defendant asked Caldwell "..you want a beep to put it in?". Agent Seeley testified a "beep" is a term for a pipe used to smoke meth, but Caldwell testified he thought the Defendant was referring to a jar. He declined because he did not want to carry anything that bulky. [2]

The Defendant never handled the meth or money being exchanged. The exchange of meth and money was solely between Rowland and Caldwell. The Defendant remained seated on the sofa during the entire exchange. And as previously indicated, there is no evidence she ever handled or held the lollipop wrapper. Caldwell testified he could not even recall seeing the Defendant eating or holding a lollipop while he was there.

Other evidence produced at the hearing included the Defendant's admissions made to Agent Seeley at the February 2, 2016 interview of her drug use and having some history of trafficking in drugs(10 -20 times), some of which may have been conducted in the home at 211 Access Highway. She did not describe the December 21, 2015 sale as one of

---

[1] This exchange was heard on the electronic recording, which was of only fair quality, but with Caldwell providing hearing testimony to confirm portions of the exchange and what was being discussed.

[2] Caldwell, Rowland and the Defendant also shared in other small talk during the exchange, including discussions about the home and some needed repairs.

the drug deals she conducted.[3] The Defendant also introduced to evidence a legal opinion by Barbara Taylor, Esq. of the Immigrant Legal Advocacy Project. Her opinion indicates the Defendant, who is a Canadian citizen with legal US resident status (green card) is likely to face deportation consequences with a trafficking conviction.

## DISCUSSION

An analysis whther to dismiss a charge as a de minimis infraction starts with the predicate or assumption that the defendant is technically guilty of the charge. So we will begin with a brief analysis of the underlying charges.

A person is guilty of unlawful trafficking in a scheduled drug if the person intentionally and knowingly traffics in what the person knows or believes to be a scheduled drug and which is in fact a scheduled drug. 17-A, M.R.S.A. 1103(1-A) Alternatively, a person may be guilty of unlawful trafficking in scheduled drugs as an accomplice if the State proves beyond a reasonable doubt that with the intent of promoting or facilitating the crimes of unlawful trafficking in scheduled drugs, the Defendant aided or attempted to aid or agreed to aid another person in the planning or commission of that particular crime. A person may be found guilty of a crime as an accomplice if the State proves beyond a reasonable doubt that:

1. Having the intent of promoting or facilitating the commission of a crime,

2. The person aids or agrees to aid or attempts to aid another person who commits a crime in the planning or commission of that crime. 17-A, M.R.S.A. Section 57(3)(A).

---

[3] It is apparent from listening to the recording of her interview that the Defendant did not know or appreciate that the December 21, 2015 sale to Caldwell was the transaction for which she was being charged.

3

Mere presence at the scene of a crime is inadequate to prove accomplice liability. State v.Gervais, 394 A.2d 1183,1185 (Me. 1978). And neither mere condonation nor passive acquiescence alone will suffice. State v. Flint, 544 A.2d 739, 741 (Me. 1988); citing State v. Doody, 434 A.2d 523, 530 (Me. 1981). Statements by a defendant to the principal of the crime that she would not interfere with his commission of a crime however has been found to be conduct beyond mere passive acquiescence sufficient to sustain a conviction. Id. And presence by a defendant as a passenger in a vehicle while the principal committed crimes could be found to be circumstances suggesting encouragement sufficient to sustain a conviction. Gervais. And a defendant who encouraged and gave advice to the principal how to poison someone, even though not present nor actively involved is sufficient to sustain accomplice liability. State v. Flint, 544 A.2d 739 (Me. 1988).

In the case at hand Rowland clearly committed the crime of unlawful trafficking of scheduled drugs. The Defendant was present during the commission of the crime. Beyond being present, her role in the commission of the crime is suggesting the use of a lollipop wrapper observed on the coffee table in which to package the meth when Caldwell indicated he did not have a jar. The wrapper was in fact used by Rowland, but Caldwell still wrapped the meth packaged in the lollipop wrapper in cellophane he had brought with him. It can also be inferrd the Defendant sustained some benefit from the criminal activity as the proceeds were used, at least partially, by Rowland to help with some of the home's expenses. It will be for the fact-finder to determine whether the State has met its burden of proof beyond a reasonable doubt that the Defendant with the intent to promote

4

or facilitate the crime of unlawful trafficking aided or attempted to aid Rowland in the commission of the crime. Notwithstanding how minor Defendant's conduct is argued to have been, "if" a fact finder were to find the State had met its burden of proof, the conviction would likely be sustained on appeal based on the rationale set forth in Gervais and Flint.

Which brings us to Defendant's motion. Title 17-A, M.R.S.A. Section 12 states:

*1.The court may dismiss a prosecution if, upon notice to or motion of the prosecutor and oppurtunity to be heard, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds the defendant's conduct:*

*A. Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the crime; or*

*B. Did not actually cause or threaten the harm sought to be prevented by the law defining the crime or did so only to an extent too trivial to warrant the condemnation of conviction; or*

*C. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in defining the crime.*

Maine's de minimis statute is based on the Model Penal Code. Not surprisingly, even though based on the model code, there is not a wealth of case law offering guidance. Maine's seminal case, State v. Kargar, 679 A.2d 81 (Me. 1996) relied on case law from New Jersey and Hawaii (State v. Smith, 480 A.2d 236 (NJ Super. Ct. Law Div. 1984);

5

State v. Park, 525 P.2d 586 (Haw. 1974)) and indicated the following factors are appropriate for de minimis analysis:

> The background, experience and character of the defendant which may indicate whether he knew or ought to have known of the illegality; the knowledge of the defendant of the consequences to be incurred upon violation of the statute; the circumstances concerning the offense; the resulting harm or evil, if any, caused or threatened by the infraction; the probable impact of the violation upon the community; the seriousness of the infraction in terms of punishment, bearing in mind that punishment can be suspended; mitigating circumstances as to the offender; possible improper motives of the complainant or prosecutor; and any other data which may reveal the nature and degree of the culpability in the offense committed by the defendant. Kargar at p. 84.

In Kargar dimissal was deemed appropriate as the criminal conduct by the defendant was not objectional in his culture; the safety valve of subsection 1(C) was intended for such circumstances where it is likely our Legislature never envisioned such conduct could ever be anything but criminal. But the analysis set forth in Kargar would apply to motions pursuant to subsection 1(B) as well.

In State v. Smith, 480 A.2d 236, the defendant, a college student whose career was at risk by a conviction was charged with theft of three pieces of bubble gum. The de minimis dismissal was pursuant to New Jersey's de minimis infraction statute which is identical to Maine's section 12(1)(B). In Smith, the court stated "While sympathetic considerations

6

play no part in a determinaton under the de minimis statute, an objective consideration of surrounding circumstances is authorized." Id.at p.238. Identical unlawful conduct by two different individuals, when considered in light of attendant circumstances might justify different outcomes. In granting dismissal, the court made note of not just the trivial amount involved, three pieces of bubble gum, but also there being no epidemic of shoplifting by students, the humility the defendant had already suffered by being charged, and the lack of criminal record and the effect a theft conviction would have on his career.Id.

Although dismissal in Kargar was pursuant to subsection 1(C), the factors it set forth for consideration were quoted from the Hawaii case, State v. Park, 525 P.2d 586 (Haw. 1974). The de minimis dismissal in Park was pursuant to its de minimis statute, Sec. 236, which is identical to Maine's Sec. 12. See Park at p. 591. Point being, the same factors are considered whether analyzing a request for a de minimis infraction dismissal pursuant to subsection 1(B) or 1(C).

Defendant brought her motion to dismiss pursuant to subsection 1(B), and the court will now analyze the relevant factors per Kargar.[4] In this case the Defendant's conduct needs to be analyzed in the context of accomplice liability, specifically the question of whether with the intent to promote or facilitate the crime of trafficking she aided or attempted to aid its commission by suggesting a lollipop wrapper be used to package the meth being sold.

---

[4] It is clear neither subsections 1(A) or 1(C) are applicable.

7

An analysis of Defendant's *background, experience and character* is not helpful to her request. Defendant was present at a home in which she sometimes resided and had some level of authority or interest vis-à-vis her mother, and knew Rowland was selling drugs from there; she also knew the drug trafficking proceeds were being used to some extent to help fund the expenses of the home. Defendant also clearly knew that the conduct was criminal and she had on some occasions participated. In other words, whether or not she was the actual seller of illegal drugs on December 21, 2015, she was there on that day fully knowing that criminal activity was being conducted. She had prior knowledge of and participation in the drug culture, both use and sales.

Next the court will consider the resulting harm or evil and probable impact upon the community. The evils, harm and impact on the community caused by trafficking and use of Methamphetamine are well known and are indeed a scourge on society. Trafficking of meth such as that being conducted by Rowland requires some form of packaging or containers. When faced with a potential "hiccup" in completing the transaction, the Defendant arguably made a suggestion, which was ultimately followed. So assuming the Defendant is guilty as an accomplice, the evils, harm and impact on the community by participating as an accomplice cannot be minimalized.

Next we will consider the actual conduct involved, which gets to the heart of a section 12(1)(B) motion- whether the Defendant's conduct under consideration contribution to the harm sought to be prevented *was too trivial to warrant condemnation of conviction?* Again, her role is analyzed as an accomplice, by her suggesting the use of a lollipop

8

wrapper to package the meth. On one hand, her comment may have been made flippantly. On the other hand, Rowland specifically inquired of Caldwell whether he had a jar to store the meth being sold; Caldwell responded he did not, to which the Defendant said "bummer". From this exchange it is clear that "something" was needed to package the meth in order for Rowland to complete the sale. Caldwell then stated he did have cellophane. It was then that the Defendant stated "..how about a lollipop wrapper", which was sitting on the coffee table in front of them. Was this simply a "flippant" comment with no intent of assisting in the crime, or was it made with intent to promote or facilitate the crime being committed by Rowland? Whatever the answer may be, Rowland did ultimately package the meth in the lollipop wrapper.

Certainly, when one considers that a "lollipop wrapper" was mentioned, that term in and by itself tends to cause one to "smirk" and think "how silly" or "how trivial". But the notion that the item recommended, a lollipop wrapper, may sound or seem silly, should not necessarily trivialize the conduct when completing an analysis pursuant to Section 12. Had the Defendant pulled from her pocket and provided a small Ziploc baggie often used to store drugs, then Defendant would likely not even pursue a Section 12 de minimis infraction dismissal. Or had she eyed on the coffee table a Ziploc baggie or similar object and suggested it be used, the suggestion would no longer have the same tenor of being so silly. Is it not because it was a "lollipop wrapper" mentioned by the Defendant that her role sounds so silly and trivial? Yet, the analysis should not be strictly "what" she referenced. The analysis should be whether her conduct as a whole contributed to the

9

commission of the crime in a manner that was more than "trivial". If, with the intent to facilitate the commission of the crime of trafficking, she aided or attempted to aid Rowland by making a suggestion of how to wrap or package the meth so the sale could be completed, then her conduct was not trivial. And in that case, the lollipop wrapper, as silly or as trivial as it sounds, was simply the item on the coffee table she identified as a suitable packaging means. And that is why, in this case, the de minimis analysis is premature.

In this case, the assessment whether or not the Defendant's conduct was trivial cannot be accomplished without falling prey to the mistake of assessing whether she is in fact guilty of accomplice liability. And that is not the court's role in a Section 12 Motion to Dismiss. In this type of motion, we are to assume the crime was committed. Hence, being charged as an accomplice, we must *assume* the Defendant's conduct was done with the *intention* of facilitating the commission of the crime of trafficking in meth by aiding or attempting to aid by suggesting a means in which to package the meth. When the question is framed in that manner, it is hard to find conduct that, if guilty as an accomplice, is not something more than trivial.

Such difficulty does not exist when the defendant seeking a de minimis dismissal is charged as the principal. In those situations, it is typically the actual harm caused or object of the crime that is analyzed for de minimis purposes. (stealing three pieces of bubble gum found to be de minimis, State v. Smith,480 A.2d 236(N.J. 1984); underage drinking of a swig of beer found to be de minimis, State v. Zarilli, 216 N.J.Super. 231

10

(N.J. 1987); possession of a small amount of cocaine found not be de minimis, State v. Brown, 188 N.J. Super. 656 (N.J. 1983); kissing of son's genitals by defendant culturally not aware of illegality or consequences of act found to be de minimis, State v. Ramirez, 205 Me. Super. LEXIS 180 (Me. 2005).

But when charged as an accomplice, and it is the defendant's role or involvement in the commission of the crime that is subject to de minimis analysis, such analysis easily merges into an analysis of whether the conduct is sufficient to find the defendant guilty of the offense as an accomplice. That is not the proper analysis for a de minimis motion.

None the less continuing with Kargar analysis, Class B trafficking convictions do result in serious consequences. In this case, the collateral consequence of likely deportation is significant and not lost on the court. And that consequence is not mitigated by suspending the sentence. But that consideration alone is not sufficient to grant dismissal. Pure sympathy considerations are to play no part in the analysis. Smith. 480 A.2d at 238. And there are otherwise no mitigating circumstances warranting dismissal.

Having to assume for the purpose of this motion that the Defendant is guilty as an accomplice, then by definition her conduct was intended to facilitate the commission of the crime of trafficking in meth, by aiding or offering aid, which could include suggesting a means to package the meth being sold. That conduct cannot be *trivial.* And otherwise, there are insufficient Kargar factors to warrant a section 12 dismissal. In short, this is a case where the fact finder needs to determine whether, beyond a reasonable doubt, the

11

Defendant is guilty as an accomplice. Or is her conduct so trivial or minimal that it cannot be found beyond a reasonable doubt that she provided aid or offered aid *intending* to facilitate the commission of the crime? Accordingly, Defendant's motion is denied.

Dated: December 13, 2016

Justice, Superior Court

12